# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN M. NOLAN, JR.** | **: CIVIL ACTION** |
| **894 Marker Drive** | **:** |
| **West Chester, Pennsylvania 19382-5507** | **:** |
| | **:** |
| **Plaintiff,** | **:** |
| | **:** |
| **v.** | **: NO.** |
| | **:** |
| **READING BLUE MOUNTAIN &** | **:** |
| **NORTHERN RAILROAD COMPANY,** | **:** |
| a Pennsylvania Corporation, | **:** |
| **Suite 1, Keystone Towers** | **:** |
| **Hamburg, Pennsylvania 19526** | **:** |
| | **:** |
| **Defendant.** | **: TRIAL BY JURY DEMANDED** |

**VERIFIED COMPLAINT**

Plaintiff John M. Nolan, Jr. sues Defendant Reading Blue Mountain & Northern Railroad Company and alleges federal and state law claims of age discrimination as follows:

**PARTIES**

1. Plaintiff is a citizen of Pennsylvania.
    1. Plaintiff resides at 894 Marker Drive, West Chester, Pennsylvania 19382-5507.

2. Defendant Reading Blue Mountain & Northern Railroad Company is a Pennsylvania corporation.

    a. At all times material hereto, defendant ("the Railroad") maintained its principal place of business at 1 Railroad Boulevard, Port Clinton, Pennsylvania 19549.

    b. Defendant is a railroad.

    c. Defendant's registered address is Suite 1, Keystone Towers, Hamburg, Pennsylvania 19526.

    d. Defendant has no appointed registered agent for service of process.

    i. Defendant's Chief Executive Officer is Andrew M. Muller, Jr.

    ii. Defendant's Vice President and Treasurer is Therman W. Madeira.

1. The actions of defendant and its agents and employees were deliberately, intentionally, willfully, purposefully, and knowingly done in violation of federally protected rights and because of plaintiff's age. The defendant either knew or showed a negligent or reckless disregard for the matter of whether its conduct violated federal rights. Its actions were outrageous and taken with evil motive, in bad faith, and without any reasonable grounds to support them. Its actions were malicious or taken with reckless indifference to federally protected rights. Plaintiff's age made a difference in all actions adverse to him. His age was a motivating or determinative

factor in all actions adverse to him.

## JURISDICTION AND VENUE

2. This action arises under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.

3. The state cause of action arises under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 953 et seq.

4. This Court has jurisdiction over the state law claim in Count II pursuant to 28 U.S.C. § 1367, which provides for supplemental jurisdiction.

5. All conditions precedent to jurisdiction have occurred or have been complied with.

    a. Plaintiff filed a timely administrative complaint with the Pennsylvania Human Relations Commission ("PHRC").

    b. The administrative complaint was dually filed with the U.S. Equal Employment Opportunity Commission ("EEOC").

    c. Neither the PHRC nor the EEOC has dismissed plaintiff's claim.

    d. The administrative proceedings have not been terminated.

6. Venue is proper in this District because it is the judicial district in which Plaintiff was employed. The claims arose in this judicial district.

## FACTS

### Plaintiff's Employment History

7. From on or about April 1, 1986, until August 2, 2000, plaintiff was

   continuously employed by defendant, first as an unpaid, volunteer employee during training; then as a paid, part-time employee; and finally as a paid, full-time employee.

8. At all times during his employment, plaintiff performed all assigned duties

   in a professional manner with competence and faithfully followed all reasonable instructions and regulations of defendant.

9. Plaintiff never received a negative performance evaluation during his fourteen

   years with the Railroad. He was promoted to more senior positions within defendant. And he received periodic pay increases.

10. During the course of his employment, plaintiff received only one written

    reprimand on or about December 29, 1999. Plaintiff received no other written reprimands during the course of his employment with the defendant.

    a. Plaintiff was given no other reason to believe that the quality of his work

    and/or his job performance were unsatisfactory.

11. Plaintiff was first hired by the Railroad as an unpaid, volunteer on or about

    April 1, 1986. At that time, he was 47 years of age.

12. Plaintiff became a paid, part-time employee of the Railroad on or about

    June 15, 1986. At that time, he was 48 years of age.

13. Plaintiff became a paid, full-time employee of the Railroad on or about

    March 17, 1997. At that time, he was 58 years of age. At that time, plaintiff worked in train service and initially was paid at the passenger rate of $6.50 per hour.

### Lower Pay

14. At the same time that plaintiff worked in tram service and initially was paid at the passenger rate of $6.50 per hour, other qualified but younger employees in the same position initially were paid at the freight rate of $11.50 per hour.

15. Plaintiff questioned the discrepancy between his rate of pay and the rate of pay of the younger workers. The Railroad then changed plaintiff's rate of pay to $11.50 per hour.

16. Plaintiff further questioned the Railroad whether he would receive a retroactive adjustment in pay for the discrepancy. The Railroad did not make such an adjustment.

**Training Disparities: Delayed License, Less Seniority, and Staggered Pay Increase**

17. On or about April 22, 1997, plaintiff received his student engineer license and was the first employee of the Railroad to enter the engineer training program. Three younger employees, Joseph Norman, William Riegle, and Mark Canfield, ("three younger trainees") received their student engineer licenses and entered the engineer training program after plaintiff.

18. During 1998, the three younger trainees were allowed to operate locomotives in a training mode with qualified engineers. As a result, each of the younger trainees completed the required number of hours at the throttle and became a licensed engineer.

19. During 1997, the Railroad gave plaintiff the opportunity to operate locomotives in a training mode with qualified engineers on only 8 days. During 1998, plaintiff had only 16 additional days as an engineer-trainee while performing conductor duties.

20. The three younger trainees received their engineer's licenses before plaintiff.
21. The three younger trainees received pay increases before plaintiff.
22. Plaintiff finally became a certified or licensed engineer on or about February 12, 1999.

23. When plaintiff finally became an engineer, he had less seniority as an engineer than the three younger trainees.

**The Pittston Job, Less Favorable Assignments, and Ban From Lehigh Division**

24. After he became an engineer, plaintiff was assigned to night shifts and received other less favorable assignments than those received by the three younger trainees.

25. In or around February 1999, plaintiff was assigned to work out of Pittston, Pennsylvania ("the Pittston job").

26. Pittston is approximately 134 miles away from plaintiff's home in West Chester.

    To drive to Pittston from his home took plaintiff approximately 2 hours and 45 minutes each way, for a total commute of approximately 5 hours and 30 minutes each day, in addition to his 12 hour shift on the train. This constituted approximately 17 hours and 30 minutes of working and commuting each day.

27. In or around February 1999, plaintiff worked the Pittston job for two days.
28. Plaintiff informed Dispatcher Wayne Weikel that such a long commute combined with the 12 hour shift was too physically draining to allow plaintiff to work safely.

29. Another dispatcher, Daren Geshwindt told plaintiff he should move closer to the job.

    a. The Railroad never offered to pay for plaintiff's moving expenses.

30. On or about April 6, 1999, plaintiff was banned from working all jobs on the entire Lehigh Division which included the Pittston job.

**Variation in Plaintiff's Assignments and Total Hours**

31. In or around December 1999, plaintiff worked on the Reading Division.

    a. While working on the Reading Division, plaintiff was assigned to the Reading Turn which ran between Port Clinton and Norfolk Southern's Reading Yard in Reading.

32. In a 9 month period ("9 month period") from approximately December 1999 to approximately August 2000, the starting time and starting point of plaintiff's assignment was changed several times.

33. In that 9 month period, plaintiff's weekly hours varied from 35 to 45 hours per week.

34. During that same 9 month period, employees under age 25 and with less seniority than plaintiff were working 50 to 60 hours per week.

35. On or about July 13, 2000, at approximately 5:55 p.m., plaintiff questioned Tyler Glass about the variation in his hours. Glass responded, "With that big pension check you get from Scott, you can afford the hours."

## CLAIMS

### COUNT I - INDIVIDUAL DISPARATE TREATMENT UNDER THE ADEA

36. Plaintiff repeats and re-alleges ¶¶ 1-37 above.
37. At all material times, Defendant Reading Blue Mountain & Northern Railroad Company was engaged in an industry affecting interstate commerce, specifically the railroad industry, and had more than 20 employees for each working day in the applicable calendar year.

**Assignment to the Reading Turn and Training of Replacement**

38. From approximately December 1999 through July 2000, plaintiff was assigned to and worked on the Reading Turn.

39. In Summer 2000, plaintiff worked with Jack Barnett, an engineer-trainee on the Reading Turn.

    a. At the time plaintiff trained Jack Barnett in Summer 2000, Barnett

was under 40 years of age.

**Plaintiff's Re-assignment to Pittston and Termination**

40. In or around July 2000, Jack Barnett became qualified as an engineer on the Reading Turn.

41. In July 2000, Plaintiff again was assigned to work the Pittston job.
42. Plaintiff reminded Dispatcher Daren Geschwindt that the long commute combined with the 12 hour shift was too physically draining to allow plaintiff to work safely.

43. On or about August 2, 2000, plaintiff was discharged by defendant.

**Circumstances Surrounding and Stated Reason for Plaintiff's Discharge**

44. At the time of plaintiff's discharge, plaintiff was a full-time conductor and engineer.

45. At the time of plaintiff's discharge, plaintiff was 62 years of age.
46. At the time of plaintiff's discharge, plaintiff was the Railroad's oldest engineer.

47. At the time of plaintiff's discharge, plaintiff was the Railroad's oldest employee in the railroad operating department.

48. When plaintiff was discharged, defendant had no remaining engineers age 60 or older.

49. When plaintiff was discharged, defendant had only three remaining engineers over age 40. All of its other engineers were under age 40.

50. At the time of plaintiff's discharge, plaintiff's railroad retirement benefits were approximately 39 months away from vesting. If he had remained employed by the Railroad, plaintiff's railroad retirement benefits would have vested in or around October 2003.

51. Plaintiff's age was a determinative factor in defendant's decision to discharge plaintiff.

52. Defendant's General Manager Tyler Glass stated to plaintiff that the reason he was discharged was because he refused to commute to Pittston.

    a. Defendant gave plaintiff no other oral or written reason for his discharge.

**Comparative Treatment**

53. Other younger employees of the defendant have complained about the distance of the commute between home and work ("longer commutes").

    a. Those employees were allowed to accept or remain on assignments with shorter commutes between home and work.

    b. The Railroad did not require those younger employees to make the longer commutes in order to maintain employment.

54. At all times material hereto, Michael Bischak, an employee in his 30's, and Chad Frederickson, an employee in his 20's, refused to work the Port Clinton jobs.

    a. Bischak and Frederickson were regularly assigned to work the Pittston job.

    b. Bischak and Frederickson were not discharged for refusing to work the Port Clinton jobs.

55. At all times material hereto, Christopher Bost, an employee in his 30's, was qualified to work the Lehighton to Pittston job ("LEPI job").

    a. Bost never worked the LEPI job.

    b. Bost never worked the Pittston job.

56. In approximately 1998, employee Joseph Norman refused to work the Pittston job.

    a. As a result, Norman was banned from working all jobs in the Lehigh Division.

    b. Norman was not discharged for refusing to work the Pittston job.

    c. Today, Norman is a part-time employee and continues to work out of Port Clinton.

57. Any reason for plaintiff's termination offered by defendant or its agents or employees is false and a pretext for discrimination by the defendant.

    **Plaintiff's Replacement**

58. At the time of and immediately after plaintiff's discharge, Jack Barnett was the engineer assigned to the Reading Turn.

59. At the time of plaintiff's discharge, Barnett was under 40 years of age.
60. At the time of plaintiff's discharge, Barnett was significantly younger than plaintiff.

**Plaintiff's Injuries**

61. After he was discharged by defendant, plaintiff began to collect social

    security benefits at age 62. As a result, plaintiff has received, is receiving, and will receive smaller social security benefit payments than he would have received had he waited until age 65 to begin collecting social security.

62. As a result of defendant's discharge of plaintiff, plaintiff has sustained losses

    including lost salary and pay increases; lost railroad retirement benefits; decreased social security payments; loss of health, medical, and other insurance benefits; and other lost past and future compensation; non-economic damages, including but not limited to damages for emotional distress, embarrassment, anxiety, and humiliation; expenses incurred in seeking alternative employment; and attorney's costs and fees.

63. Plaintiff's discharge by defendant violated the provisions of 29 U.S.C.

    § 623(a)(1), which makes it unlawful for an employer "to discharge any individual or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."

64. Defendant acted willfully and in violation of the Age Discrimination in

    Employment Act, 29 U.S.C. § 621 et seq.

    a. Accordingly, plaintiff also is entitled to recover both punitive damages and

    statutory liquidated damages from defendant.

### COUNT II - AGE DISCRIMINATION UNDER THE PHRA (43 P.S. § 953 ET SEQ.)

65. Plaintiff repeats and re-alleges ¶¶ 1-66 above.
66. At all times material hereto, plaintiff was the best able and most competent to

    perform the services required by the defendant.

67. Plaintiff's discharge by defendant violated the provisions of 43 P.S. § 955(a),

which makes it unlawful for any employer to discharge from employment any individual or otherwise to discriminate against any individual with respect to his compensation, hire, tenure, terms, conditions, or privileges of employment, because of such individual's age if the individual is the best able and most competent to perform the services required.

**WHEREFORE**, plaintiff prays that the Court grant the following relief:

1. Enter judgment against the defendant for violations of federal and state law.
2. Enter a declaratory judgment declaring the actions of the defendant to be

    violations of federal and state law.

3. Issue a prohibitory injunction restraining the defendant from engaging in the

    unlawful discriminatory practices charged in this Complaint.

4. Issue a permanent injunction requiring defendant to expunge plaintiff's personnel

    files of any derogatory, false, or misleading information relating to this matter.

5. Enter judgment against defendant for nominal, liquidated, compensatory, and

    punitive damages for violation of plaintiff's rights.

6. Award damages in an amount to be determined at trial, for lost salary and wages,

    back pay and benefits, and incidental damages to which plaintiff is entitled and enjoin defendant to make any appropriate adjustments for lost benefits.

7. Award damages for front pay, including all incremental pay increases received

    by defendant's engineers at all times material hereto.

8. Award statutory liquidated damages.
9. Award damages for the loss of railroad retirement benefits.
10. Award damages for lost or reduced social security benefits.
11. Award damages for the loss of the right to insurance benefits, including

    but not limited to lost health, medical, and other insurance benefits.

12. Award incidental damages for expenses incurred in seeking alternative

    employment.

4. Award reasonable attorneys' fees, costs, and pre-judgment and post-judgment

   interest against the defendant.

5. Require such other and further relief as is equitable, just, and proper.


_____ **JOHN M. LaROSA**

Pa. S.C. No. 85339

Two East Seventh Street, Suite 302

Wilmington, Delaware 19801-3707

(302) 888-1290 (telephone)

(302) 655-9329 (fax)

Attorney for Plaintiff

Dated: May ___, 2002

## DECLARATION OF JOHN M. NOLAN, JR.

1. I am the plaintiff in this action. I have personal knowledge of the facts

contained in this declaration, and if called as a witness, I am competent to testify to those facts.

2. I have read the **Verified Complaint**. The facts contained therein are true

and correct to the best of my knowledge, information, and belief.

3. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the

foregoing is true and correct.

_____

**JOHN M. NOLAN, JR.**

Executed on: May ___, 2002

Attorney Files/John's Files/Client Files/Nolan/Pleadings/Complaint