IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN NOLAN**  **Plaintiff,** | CIVIL ACTION |
| vs. | NO. 02-2805 |
| **READING BLUE MOUNTAIN &**  **NORTHERN RAILROAD CO.**  **Defendant.** | |

**MEMORANDUM AND ORDER**

Tucker, J.                                                                                           March 11, 2005

Plaintiff John Nolan ("Plaintiff") is a Pennsylvania resident and brings this action pursuant to the Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 953 *et seq*. This action stems from Plaintiff's termination from Defendant Reading Blue Mountain and Northern Railroad ("Reading Blue" or "Defendant").

Presently before this Court is Defendant's Motion for Summary Judgment (Doc. 27). Upon consideration of Defendant's Motion, Plaintiff's response thereto (Doc. 31), and oral argument held before this Court, for the reasons set forth below, this Court will deny Defendant's Motion.

**I.    BACKGROUND**

The following facts are based on the evidence of record viewed in the light most favorable to the Plaintiff as the non-moving party. Defendant Reading Blue Mountain and

Northern Railroad is a railroad company operating in Port Clinton, Pennsylvania. In 1986, Plaintiff, at age 47, began part-time employment at Reading Blue as a volunteer brakeman/conductor on the passenger service. In March 1997, at age 58, Plaintiff became a full-time conductor on the freight service. In April 1997, Plaintiff entered the engineering training program. At that time, three younger trainees entered the program and received their license in December 1998. In February 1999, Plaintiff received his engineering license. During Plaintiff's tenure as a full-time engineer, he was qualified as an engineer on virtually every "run" within the railroad's two divisions, Reading and Lehigh. Plaintiff worked primarily in Port Clinton of the Reading Division. Plaintiff was also qualified to work in the Lehigh Division, with the exception of the second-shift run at Pittston. The Pittston location is approximately 134 miles from Plaintiff's residence, which equates to a 2-hour and 45 minute commute each way. Plaintiff was assigned to the Pittston location in February and April 1999. In April 1999, Plaintiff was banned from the Lehigh Division after a dispute with the then general manager, Joe Abdo. On July 31, 2000, Plaintiff was assigned to the second-shift at the Pittston location for the following day, August 1, 2000, in order to qualify on that run. Plaintiff objected to the assignment and voiced safety concerns regarding the length of the commute and the 12-hour shift work schedule. Plaintiff failed to show up for the assignment. The next day, August 2, 2000, Plaintiff, at age 62, was terminated by the general manager, Tyler Glass.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. C. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

    A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis of its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial." Id. That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[I]f the opponent [of summary judgment] has exceeded the 'mere scintilla' [of evidence] threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent." Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). The court must view the evidence presented in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

With respect to summary judgment in discrimination cases, the court's role is "to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." Hankins v. Temple Univ., 829 F.2d 437, 440 (3rd Cir. 1987).

### III.   DISCUSSION

#### A.   *Age Discrimination Analytical Framework*

To prevail on an ADEA claim, plaintiff must show that his age "actually motivated" or had a "determinative influence on" the employer's decision to fire or not to hire him. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141 (2000). An ADEA plaintiff can meet this burden by presenting direct or indirect evidence of discrimination. See Price Waterhouse v. Hopkins, 490 U.S. 228 (1980)(establishing mixed motive analytical framework); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)(establishing pretext analytical framework). Under both analyses, the plaintiff must first state a prima facie case for discrimination, showing by a preponderance of evidence that plaintiff: (1) was over 40 years old; (2) was qualified for the position in question; (3) suffered an adverse employment decision; and (4) was replaced by a sufficiently younger person, to create an inference of age discrimination. See Monaco v. American General Assurance Co., 359 F.3d 296 (3d Cir. 2004).

The burden of proof varies depending on whether the case is characterized as being a mixed motive or pretext case. The present case is based on indirect or circumstantial evidence, thus, the case proceeds under pretext analysis. In a pretext case under McDonnell Douglas, once

4

a prima facie case has been established, the burden shifts to the employer to articulate a legitimate and nondiscriminatory reason for its decision. If met, then the burden shifts back to the plaintiff to show, by a preponderance of the evidence, that the employer's proffered reason was actually a pretext for discrimination.

Plaintiff may survive summary judgment by submitting evidence from which a fact-finder could reasonably either (1) disbelieve the employer's articulated reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's actions. See Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). Specifically, the non-moving Plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact-finder could rationally find them "unworthy of credence," and hence infer that the employer did not act for the asserted non-discriminatory reasons. Fuentes, 32 F.3d at 765.

**B.**     *McDonnell Douglas Analysis*

    1.     *Prima Facie Case*

Here, the parties do not dispute that a prima facie case for age discrimination has been made. Plaintiff was 62 years old when he was terminated from his engineering position, for which he was qualified, and was replaced by a younger engineer. At issue, in this case, is whether the Plaintiff has produced sufficient evidence to create a genuine issue of material fact by demonstrating that Defendant's justification is not credible and that age-related animus motivated the decision to terminate the Plaintiff. See *supra*.

2.   *Defendant's Legitimate, Nondiscriminatory Reason*

Plaintiff having established a prima facie case, the burden of proof shifts to Reading Blue to proffer a legitimate, non-discriminatory reason for the adverse discrimination action. The employer satisfies its burden of production by introducing evidence, if taken as true, would permit the conclusion that there was a nondiscriminatory reason for its decision. See Showalter v. Univ. of Pittsburgh Med. Ctr., 190 F.3d 231, 235 (1999).

Defendant Reading Blue contends that its decision to terminate Plaintiff was based on Plaintiff's refusal to report to his work assignment at the Pittston location on August 1, 2000. Defendant avers that Plaintiff was assigned to Pittston in order to qualify for that particular run. See Doc. 27, p. 7.

Defendant provides a copy of its termination policy. The termination policy, in relevant part, provides:

> The Reading Blue Mountain and Northern considers some offenses so serious that they can result in immediate termination. At Reading Blue Mountain & Northern Railroad's discretion, consistent with at will employment, the following behaviors are among those that could result in immediate dismissal - refusal to comply with work assignments or instructions; deliberate disobedience of any railroad rule or regulation after it has been specifically brought to the employee's attention, etc. See Doc. 28, Exhibit C.

Defendant has stated the reason for Plaintiff's termination. As such, the burden shifts to Plaintiff to show that the articulated reason was pretextual.

3.   *Pretext*

Plaintiff must show that Defendant's articulated non-discriminatory reason is a pretext for discrimination by pointing to some evidence that demonstrates that there is a reason to disbelieve the employer's explanation. To discredit the employer's articulated reason, the plaintiff need not

produce evidence that necessarily leads to the conclusion that the employer acted for a discriminatory reason. See Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997); See also Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). Also, Pretext is not demonstrated by showing that the employer was mistaken. See Sempier v. Johnson & Higgins, 45 F.3d 724, 731 (3d Cir. 1995). "The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is discrimination." Keller, 130 F.3d at 1109. The court examines the record for "evidence of inconsistencies or anomalies that could support an inference that the employer did not act for its stated reasons." Sempier, 45 F.3d at 731; See also Hazen Paper Co. v. Biggins, 507 U.S. 604 (1993) (holding that under the ADEA "a disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in [the decision-making] process and had a determinative influence on the outcome").

  First, Plaintiff presents the following contradictions and inconsistencies: (1) younger engineers were not assigned outside of their division, (2) younger employees were not asked to commute long distances, (3) younger employees who complained about or refused to make the long commute were not fired, (4) Plaintiff's identical conduct in 1999 resulted in a ban. Specifically, Plaintiff states that Joe Norman, Mike Bischak, Chad Frederickson, and Michael Creedon all refused to work the Port Clinton or Pittston assignment and were not fired. See Doc. 32, B033; see also Pl. Decl. ¶¶ 27-29. Contrary to Plaintiff's assertions, Bischak testifies that he never refused to work the Port Clinton job. Bischak did complain regarding the long commute and the work-shift, but, nevertheless, fulfilled the assignment. See Doc. 32, B719-21. Norman testifies that he commuted to Pittston for training purposes for two weeks, working eight to twelve hour shifts. Id. at B650-B651. Frederickson testified that he has never refused to work out

of Port Clinton or Pittston locations. Id. at B690-91. Similarly, Creedon testifies that he has never refused to work a Port Clinton or any other job assignment. Id. at B750-B751.

Defendant maintains that no employee has ever refused a work assignment. See Transcript, p. 13. Defendant concedes, however, that Michael Bischak refused to work out of Port Clinton. Defendant distinguishes Bischak as a employee under contract and thus was able to negotiate for the condition, whereas, Plaintiff was an at-will employee and subject to assignments throughout the railroad. Plaintiff counters by pointing out that he was previously banned from the Lehigh division for complaining about the long commute and that management was aware of that ban. Nevertheless, management made the assignment with full knowledge of Plaintiff's objections.

Second, suggesting implausibilities, weaknesses, and incoherencies, Plaintiff posits that there was no business need for Plaintiff to work in Pittston. Wayne Weikel testifies that there was no business need for Nolan to be assigned to Pittston. Weikel asserts that "Tyler Glass [general manager] just scheduled John to qualify there...Glass know that John would not work at Pittston. He scheduled John to work there in order to give him an excuse to fire him." Weikel's Decl., ¶¶ 28, 29, pp. B037. From Weikel's declaration and deposition, Plaintiff deduces that Plaintiff's work assignment was contradictory to Defendant's general practice, and the "[business] need" for Plaintiff to work at Pittston was weak, incoherent, and implausible. See Pl's Answer, p. 6. Defendant counters by offering documentation that Defendant was in contractual negotiations with Proctor and Gamble and would need engineers to qualify on the various runs within the divisions. See Doc. 28, Exhibit B.

Third, Plaintiff contends that he was underpaid for a period of three weeks and that he

8

was subjected to a longer licensing period than younger engineers. See Pl's Brief, pp. 15-16. Defendant admits that Plaintiff did not receive the pay adjustment when he transitioned from the passenger to the freight service. Defendant, however, maintains that the mistake was due to a paperwork error. Defendant further maintains that, while there is an hourly requirement to attain the engineer's license, qualifying is mainly a self-driven initiative. See Def's Motion, pp. 8-9. Plaintiff counters that management's scheduling prevented him from obtaining his license sooner, and as a result, he was considered more junior than younger engineers who entered the program with him. See Pl's Brief, p. 16.

Lastly, Plaintiff considers, *inter alia*, the composition of the workplace by chronicling a series of events that resulted in a new, younger management team and a younger group of engineers. Plaintiff relies on Weikel's assertion that he overheard Andrew Muller, owner of Reading Blue, state that he would not hire another veteran railroader because [veteran railroaders] think like railroaders and not like businessman. See B451. Weikel further declares that management was aware of and participated in referring to Plaintiff as "old-timer" and one of the "Viagra twins." See B451- B452; see also Weikel's Decl. ¶¶ 36-41. In depositions, no other employees recall such name calling.

Considering the evidence, Plaintiff contends that younger employees refused work assignments and were accommodated, *i.e*. Bischak. Although, in deposition testimony, younger employees refute that they ever refused a work assignment. Plaintiff points to the overall change in the engineering crew and management team that resulted in a much younger workforce. Plaintiff additionally points to the discrepancy in his pay and licensing period as compared to other similarly situated engineers. Plaintiff further points to, and Defendant agrees, that Plaintiff

9

was known to have a strong work ethic and received commendations for his work. Defendant refutes claims that it intentionally underpaid Plaintiff or extended his licensing period.

For the most part, Plaintiff relies on the deposition testimony of one individual, Wayne Weikel, to demonstrate that Plaintiff's age was the motivating factor in Defendant's employment decision. On one hand, we have the testimony of Plaintiff and Weikel; and on the other hand, we have the testimony of the various employees and the general manager that challenges the assertions of the former employees. Neither party has produced documentation, such as personnel files, attendance records, reprimands, records of hiring/firing decisions to buttress their assertions. There is no memorialization of conversations or complaints that indicate how contested work assignments were handled by management. Here, essentially, it comes down to Plaintiff's testimony versus the Defendant's testimony regarding alleged discriminatory accommodation and decision-making.

The question is whether Plaintiff has produced sufficient evidence to allow a jury to find that Defendant did not terminate Plaintiff for insubordination. As instructed by Sempier, it is not this Court's role to compare the testimony of various declarants and decide who is more credible or to weigh the disputed evidence and decide which is more probative. See Sempier v. Johnson, 45 F.3d 724, 731-32 (3d Cir. 1995). This Court finds, viewing the record as a whole, that Plaintiff has offered sufficient evidence to discredit the Defendant's articulated reason. Although that evidence is largely from one witness, Wiekel, it is for the jury to determine the witness' credibility. Here, the record *could* support an inference of age discrimination, even if the evidence does not necessarily lead to the conclusion of age discrimination. Therefore, Defendant's summary judgment motion is denied.

## IV.  CONCLUSION

The Court has carefully considered the evidence of record in the light most favorable to the Plaintiff, the non-moving party, to determine whether Plaintiff has carried his burden of creating a triable issue of material fact.  This Court finds that Plaintiff has sufficiently cast doubt upon the veracity of the Defendant's reason for the adverse employment action.  Accordingly, Defendant' motion for summary judgment will be denied.

An appropriate Order follows.