IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN M. NOLAN, JR. : | CIVIL ACTION |
| Plaintiff : | |
| : | NO: 02-CV-2805 |
| v. : | |
| READING BLUE MOUNTAIN & : | |
| NORTHERN RAILROAD CO. : | |
| Defendant : | |

**DEFENDANT'S PRETRIAL MEMORANDUM**

**I.  BRIEF STATEMENT OF NATURE OF ACTION AND BASIS FOR JURISDICTION**

Plaintiff, John Nolan, Jr. ("plaintiff"), brings two counts against defendant, Reading Blue Mountain and Northern Railroad ("Railroad") alleging that defendant unlawfully terminated his employment due to his age. Count I is brought under the Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. § 1621 et seq. and Count II is based upon the analogous provision of the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 953 et seq. Both claims rest upon the allegation that defendant's reason for firing plaintiff is a pretext for age discrimination. Plaintiff seeks the following forms of damages: backpay, frontpay, loss of railroad retirement benefits, loss of social security benefits, statutory liquidated damages, punitive damages, and attorneys' fees.

## II. STATEMENT OF FACTS

On August 2, 2000 the Railroad terminated plaintiff's employment due to his failure to appear for an assignment out of the Railroad's Pittston, Pennsylvania station on August 1, 2000. Plaintiff's termination was communicated by the Railroad's General Manager, Tyler Glass, at a meeting with plaintiff and Human Resources Director, Tina Muller, on August 2, 2000 and confirmed by way of letter. There is no dispute that the stated reason for plaintiff's termination was his failure to report for his Pittston assignment. Rather, plaintiff claims that the stated reason for his termination was a pretext and the real reason he was terminated was due to his age. Plaintiff further claims that his assignment to Pittston amounted to a constructive discharge due to the lengthy commute. However, plaintiff had been only temporarily assigned to the Pittston second shift in order to learn it and become qualified on it, so the railroad could have plaintiff available as a qualified engineer on the site for future business needs. At the time of his termination plaintiff was 62 years-old.

Plaintiff worked for the Railroad from April 1, 1986 until his termination. From April 1, 1986 to June 14, 1986, plaintiff was a volunteer part-time brakeman on the passenger service. On June 15, 1986, plaintiff became a conductor with the passenger service. He remained in this position until March 16, 1997. On March 17, 1997, at the age of 58, plaintiff became a full-time conductor on the freight service. He was issued his locomotive engineer certificate on April 3, 1997 when he began training to become an engineer. Plaintiff was issued his engineer's license on February 12, 1999 at the completion of his training. He remained in the position of full-time engineer up until the time of his termination.

The Railroad has a well-established and well-known policy of qualifying its engineers. Engineers must be qualified to work on a particular run on the Railroad before they can be

DOCS_NJ 230868v1

assigned as the primary engineer on that run. During his tenure as a full-time engineer, plaintiff was qualified as an engineer on virtually every run within the Railroad's two divisions known as Reading and Lehigh. In fact, plaintiff took pride in his versatility throughout the Railroad and actively sought to be qualified throughout.

The Railroad also has a well-established and well-known policy with regard to assigning engineers. Although engineers were often qualified on several runs at different stations throughout the Railroad, they typically worked out of a few of those stations. Engineers were required, however, to periodically, temporarily work out of stations different from their standard stations due to illness, vacations, business needs and the like. Plaintiff worked primarily out of the Port Clinton station as well as, to a lesser extent, the Tamaqua, Jim Thorpe and Mauch Chunk stations during his tenure as a full-time engineer. Although plaintiff was primarily stationed out of the Reading Division, he was also qualified as an engineer in the Lehigh Division on all runs except for the second shift at Pittston and therefore was subject to assignment at those other locations if the need presented.

Prior to his termination, plaintiff was assigned to work out of the Pittston station on two occasions: February 18, 1999 (a week after receiving his engineer's license) and April 6, 1999. He worked nine and a half (9½) hours during the February assignment and eight (8) hours during the April assignment. After the April 1999 assignment, the general manager of the Lehigh Division, Joe Abdo, allegedly became displeased with plaintiff and he was no longer assigned to the Lehigh Division. Mr. Abdo retired from the railroad in early 2000 and plaintiff admittedly was again subject to assignment in Pittston.

Plaintiff was next assigned to Pittston for the second shift on August 1, 2000. This was a temporary assignment to qualify plaintiff on that particular run. General Manager, Tyler Glass,

made this assignment due to a legitimate business need. The Railroad was in the process of negotiating with Proctor and Gamble for work which would, and eventually did, increase the Railroad's activities in the Lehigh Division, including runs out of Pittston. Qualifying plaintiff on both Pittston shifts would have provided the Railroad with the flexibility of assigning plaintiff to any run in the Lehigh Division once the activity increased as expected. Although there were no plans to permanently assign plaintiff to a Lehigh Division station, with the anticipated increased activity, the Railroad desired the flexibility to assign plaintiff throughout the entire Lehigh Division on a temporary basis if need be.

During his tenure as a full-time engineer, plaintiff's only written reprimand occurred on December 29, 1999 due to an accident on December 23 in the Tamaqua yard, which resulted in a NORAC Rule 956 violation movement of an engine through an improperly lined switch causing damage to the switch. No formal written performance evaluations were done with respect to plaintiff during his tenure as a full-time engineer.

### III. CLAIMED MONETARY DAMAGES

See plaintiff's pretrial memorandum. Defendant disputes each and every allegation of damages.

### IV. DEFENSE WITNESSES

John Nolan (liability and damages)
894 Marker Drive
West Chester, Pa. 19382-5507

Tyler Glass (liability and damages)
142 Hillcrest Road
Mohnton, Pa. 19540

Wayne Michel (liability and damages)
2118 Welsh Valley Road
Phoenixville, Pa. 19460

Daniel Gilcrest (liability)
238 Yale Road
Strafford, Pa. 19087

Daren Geschwindt (liability)
207 Fawn Court
Hamburg, Pa. 19526

William Riegle (liability)
433 Nichols Street
Pottsville, Pa. 17901

Joseph Norman (liability)
1289 South Route 183 Rd.
Schuylkill Haven, Pa. 17972

Christina Muller-Levan (liability and damages)
71 Long Rd.
Lenhartsville, Pa. 19534

Therman Madeira (liability and damages)
34 Zweizig Rd.
Shoemakersville, Pa. 19555

Andrew Muller Jr. (liability and damages)
16 Snowdrift Rd.
Kutztown, Pa. 19530

Al Luedtke (liability)
9 White Lane
Jim Thorpe, Pa. 18229

Christopher Bost (liability)
P.O. Box 12941
Reading, Pa. 19612

Jack Barrett (liability)
521 Lyman Ave.
Womelsdorf, Pa. 19567

Michael Kolbe (liability)
47 N. Berne Street
Schuylkill Haven, Pa. 17972

Michael M. Creedon (liability)
10 Sonny Drive

-6-

Old Forge, Pa.18518

Michael Bischak (liability)
778 Main Street
Simpson, Pa. 18407

Chad Frederickson (liability)
2 Charles Street
Tamaqua, Pa. 18252

David J. Hempeler (liability)
225 N. Broadway St.
Wind Gap, Pa. 18091

Michael J. Bednar (liability)
3215 Water Street
Whitehall, Pa. 18052

Joseph Abdo (by videotape)(liability)
16946 SE 93rd Cuthbert Circle
The Villages, Fl 32162

Defendant reserves the right to supplement this list as necessary for rebuttal purposes.

V.    **EXHIBITS**

D-1   Plaintiff's complaint

D-2   Defendant's answer

D-3   Plaintiff's answers to all interrogatories along with attachments

D-4   Plaintiff's answers to all requests for production along with attachments

D-5   Plaintiff's Rule 26 Initial Disclosures along with all attachments

D-6   Defendant's answers to all interrogatories along with attachments

D-7   Defendant's answers to all requests for production along with attachments

D-8   Defendant's Rule 26 Initial Disclosures along with all attachments

D-9   Chart identifying defendant's engineers' qualifications as of July 31, 2000, bate-stamped RBM 0184

D-10  Chart identifying defendant's train crews in July and August, 2000, RBM 0185-0201

D-11  Chart identifying defendant's engineer schedules during July and August, 2000; RBM 0202-0209

D-12  Defendant's summary of job starts for Lehigh and Reading Divisions, 2000 through 2003, RBM 0210-0214

D-13  Emails, letters, meeting notes and faxes regarding defendants' business opportunities with Procter & Gamble from November, 1999 through March, 2001, RBM 0215-0238

D-14  Documents from U.S. Railroad Retirement Board, RBM 0239-0246

D-15  Plaintiff's payroll status change forms, RBM 0001-0009

D-16  Plaintiff's personal benefit statements, RBM 0014-0025

D-17  Memo re: schedule work hours for plaintiff, RBM 0026

D-18  Termination letter dated 8/2/00, RBM 0034

D-19  RBMN Employee Qualifications Questionaire, RBM 0035

D-20  Plaintiff's Locomotive Engineer Certificate, RBM 0036

D-21  Questionare re: work hours, RBM 0037

D-22  Printout re: plaintiff's tests, observations, inspections, qualifications, RBM 0038

D-23  Train handling performance examination, RBM 0049-52

D-24  Operational test and inspection rules compliance forms, RBM 0053-0058

D-25  Reports of Examination, RBM 0060-70

D-26  Engineer Trainee Log, RBM 0081-85

D-27  Letter from plaintiff to Michael Harting, RBM 0088

D-28  Fax note from Madeira re: plaintiff's request, RBM 0089

D-29  Daily Training Logs, RBM 0091-92

D-30  Reprimand letter, RBM 0098

D-31  Unusual Occurrence Report, RBM 0099

D-32  Letter, plaintiff to James Raffa, RBM 0100

DOCS_NJ 230868v1

D-33   Letter Nolan to Madeira, RBM 0103

D-34   Letter Nolan to Madeira, RBM 0104-105

D-35   Letters Nolan to Madeira, RBM 0110-115

D-36   Letter Nolan to Madeira, RBM 0120

D-37   Letter Nolan to Madeira, RBM 0126

D-38   Employee Interview Questionnaire, RBM 0127-130

D-39   Employee Package, RBM 0132

D-40   Plaintiff's resume, RBM 133-134

D-41   Joseph Norman employee trainee log, RBM 0138

D-42   Joseph Norman locomotive engineer certificate, RBM 0139

D-43   Chart identifying defendant's engineers, pay rate and DOB on 8/1/00 – RBM 0140

D-44   Plaintiff's Schedule of Duty, 1997-2000, RBM 0141-0155

D-45   Defendant's General Policy, RBM 0156-0168

D-46   Defendant's Employment Policy, RBM 0169-0183

D-47   Schedules of Duty – Joseph Norman, William Riegle and Mark Canfield, RBM 00247-260

D-48   Chart re: defendant's terminated employees, 1999-2005, RBM 0261

D-49(a-z)   Demonstrative evidence reflective of the information contained with the exhibits identified herein as well as plaintiff's exhibits.

All exhibits listed by the plaintiff

Defendant reserves the right to supplement this list as necessary for rebuttal purposes

**VI.   ESTIMATED TRIAL LENGTH**

Five to seven days.

-9-

                          WHITE AND WILLIAMS LLP

BY: _____
        Robert G. Devine
        Michael W. Horner
        1800 One Liberty Place
        Philadelphia, PA 19103
        Attorneys for Defendant,
        Reading Blue Mountain &
        Northern Railroad Co.

DOCS_NJ 230868v1